UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE G. HARRIS, a/k/a, GEORGE G. HARRIS' WILDLIFE COLLECTION,<br><br>*Plaintiff*,<br><br>-vs-<br><br>CREATIVE CASTINGS, INC., LESTER DOUGLAS and STEVEN ROHRBACH, individually,<br><br>*Defendants*. | **COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>Civil Action No. |

Plaintiff George G. Harris' Wildlife Collection (hereinafter "Harris"), by and through its attorneys, Wellinghorst & Fronzuto, LLC and Hiscock & Barclay, LLP, for its Complaint against defendants Creative Castings, Inc., Lester Douglas, and Steve Rohrbach (hereinafter collectively "Defendants"), hereby demand a trial by jury and allege as follows:

### INTRODUCTION

1.  This action for copyright infringement, trademark infringement, unfair competition, unfair trade practices, direct copying of molds and casts and fraud/misrepresentation, is brought pursuant to Federal statutes, namely the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* and § 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), under several state statutes, and under common law.

2.  Harris asserts these claims as a result of copying by Defendants, individually and/or collectively, of the Harris' original works of authorship and wearable art embodied in wildlife art pewter pins; use of a confusingly similar trademark on its infringing copies; use of confusingly similar trade dress; use of deceptive advertising and/or false advertising practices;

false designation of origin and other unfair competition, and breach of an agreement to cease all infringing activity. Harris seeks the full extent of relief available to him under the aforementioned acts, statutes and laws, including a permanent injunction against Defendants' continued acts and infringements, and an Order directing the surrender of all infringing products for destruction, actual damages, including lost profits, statutory damages, the costs of this action including reasonable attorneys fees, and for such other and further relief as to this Court may seem just, proper and equitable.

## PARTIES

3. Plaintiff George G. Harris, a/k/a George G. Harris' Wildlife Collection, is a New Jersey resident with a mailing address of P.O. Box 748, in Englishtown, New Jersey.

4. Upon information and belief, Defendant, Creative Castings, Inc. is a Washington Corporation having a business address of 3237 East Morely Way, Seattle, Washington 98112.

5. Upon information and belief, Defendant, Lester Douglas is a citizen of the state of Washington and resides at 3255 Seabeck Highway, NW, Bremerton, Washington 98312.

6. Upon information and belief, Defendant, Steve Rohrbach is a citizen of the state of Washington and resides at 3237 East Morely Way, Seattle, Washington 98112.

## SUBJECT MATTER JURISDICTION AND VENUE

7. This is an action for copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*, trademark and trade dress infringement, false advertising, false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. §

1125(a); and related claims for fraud/misrepresentation, and unfair business practices, false advertising, and unfair competition.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1338 and 1367.

9. Harris has complied with all formalities required under the Copyright Act, including, but not limited to having obtained registrations and/or made application to and by sending appropriate applications and deposit materials to the United States Copyright Office, for among others, the works listed in Exhibit A.

10. Venue in this action lies within this Court pursuant to 28 U.S.C. §§ 1391(b).

## BACKGROUND

11. Harris is engaged in the sculpting, design, manufacture, marketing and sale of original sculptures, wearable art and ornamental jewelry, which include his singular and distinctive expression of wearable art from Harris' Wildlife Collection, namely his copyrighted works depicting various forms of wildlife and animals, among other things in various metals ("Works"). Harris' Works were and are at all relevant times hereinafter mentioned, sold in several states throughout the United States, including but not limited to the States of New Jersey and Washington.

12. Harris' Works were developed through the meticulous sculpting, molding and casting in various metals, which embody his original expression, reduced to a tangible medium, including his individualized animal motifs and wildlife images, whereby a mold is created, out of which the Works are cast, and which replicates the original sculpture in every detail, and from which duplicates are reproduced and sold as wearable art.

13. Details of Harris' Works include, but are not limited to, his unique and original expression, and his selection and arrangement of the subject matter of the Works onto jewelry pieces.

14. Harris' Works are individual expressions of the wildlife and animals depicted therein, and include the originally designed mold and cast, and convey a unique expression of the Works.

15. Harris is, in whole or in part, the author, owner and/or creator of the various Works hereinbefore mentioned, claims ownership to copyright rights in his various Works, is entitled to all of the exclusive rights that inure to the benefit of a copyright holder pursuant to the United States Copyright Act ("Act"), including the rights bestowed by section 106 of the Act, and has taken appropriate measures to protect his copyright and place the public on notice thereof.

16. All of Harris' Works were and are sold with statutory copyright notices on them, and copyright registrations have been obtained for those Works listed in Exhibit A.

17. Harris uses and has continuously used since at least as early as 1986 the trademark "WILDLIFE COLLECTION" in association with his Works.

18. Harris use of the "Wildlife Collection" has been widespread and substantial such that the public has come to associate the trademark exclusively with Harris.

19. Harris also uses and has continuously used for many years certain distinctive trade dress in association with his Work, examples of which are shown in Exhibit B.

20. Harris' use of his trade dress has been widespread and substantial such that the public has come to associate the trade dress exclusively with Harris.

21. Harris' Works, trademark and trade dress are and were, at all times hereinbefore mentioned, marketed, advertised, used, and sold primarily through exhibitions, shows, trade shows, the Internet, through distributors and in catalogs, by Harris, its agents, representatives or assigns.

## DEFENDANTS' UNLAWFUL PRACTICES

22. Defendants, individually and/or collectively operate a business that markets, advertises and offers for sale, among other things, without Harris' permission, unlawful copies of the Works, including virtual mirror images of Harris' original Works, throughout the United States, including but not limited to the State of New Jersey.

23. Defendants Creative Castings and Douglas, for many years acted as an authorized distributor and reseller of Harris' Works.

24. Defendant Douglas advertised and sold Harris' Works through trade shows, through Defendant Creative Castings' website (www.wildlifepins.com), among other websites, and through other forms of media.

25. Harris further provided links from his website to Defendants' website so that consumers could easily access Defendants' website to purchase Harris' Works.

26. In 2005, Harris learned that Defendant Douglas began selling and marketing wildlife and animal pins under a confusingly similar term "Wildlife Collectibles" for itself and other third parties; and learned that Defendant Douglas began selling and marketing wildlife and animal pins with packaging that is confusingly similar to Harris' trade dress.

27. Harris further learned that Defendant Douglas began manufacturing and selling pins that are virtually identical to Harris Works.

28. Harris also learned that Defendant Douglas began advertising and marketing Harris' Works as his own, and that Defendant Douglas began advertising and marketing his infringing pins as original creations made by Douglas.

29. Harris discussed these infringing and unfair competitive business activities with Defendant Douglas, along with his false and deceptive advertising, and was reassured by Defendant Douglas that such activities would immediately cease, and Defendant Douglas signed an agreement acknowledging such. A copy of the agreement between the parties is attached as Exhibit C.

30. One year later Harris discovered Douglas was still engaging in infringing and other unfair competitive activities, causing Harris to contact Defendant Douglas again demanding that such activities stop.

31. Defendant Douglas again acknowledged his wrongdoing and took affirmative steps to correct the infringing activities. A copy of correspondence acknowledging the improper activity and agreeing to take corrective measures are attached as Exhibit D.

32. Recently, Harris learned that Defendants, individually or collectively, have again engaged in the advertising of Harris' Works as that of Defendants; they are continuing to use a confusingly similar term in conjunction with their animal pins; have made false and misleading statements as to the origin of certain goods; and have manufactured and sold pins which are substantially similar to the Harris Works.

33. Defendants have sold pins that are substantially similar if not identical copies to the Works and have made false statements that such Works were created *by* and originate *from* Defendants and their artists.

34. Furthermore, Defendants have advertised certain pins as those of Harris, but supplied other pins and products that are *not* those of Harris, essentially engaging in "bait and switch" behavior, counterfeiting, and reverse passing off.

35. Moreover, Defendants have made false and other misleading statements on a website within its control regarding the origin of its products and the artists who have worked on the pins sold by Defendants. A copy of the website showing the false and/or misleading statements is attached as Exhibit E.

36. Defendants, individually or collectively, deceived Harris by making written and verbal assurances that its infringing and unlawful activities would stop.

37. In contradiction to Defendants' assurances and statements that they corrected and/or stopped their infringing and unfair competitive activities, Defendants continue violate and infringe Harris rights.

### AS AND FOR A FIRST CAUSE OF ACTION
### (COPYRIGHT INFRINGEMENT):

38. Harris repeats and realleges the allegations contained in Paragraphs "1" through "37" of this Complaint as more fully set forth herein.

39. The Works consist of original and independently created works and expressions of wildlife and animals that have been reduced to a tangible medium by Harris, his agents or assigns.

40. Harris owns the Works, which are the proper subject matter of copyright protection.

41. Harris has been duly issued Certificate of Registrations on each of his Works, as is identified in Exhibit A, and has individually marked his works with a copyright notice.

42. Upon information and belief, Defendants have reproduced, prepared derivative works from, and/or distributed unauthorized copies of Harris' copyrighted Works, and/or otherwise infringed his copyrights, in violation of the exclusive rights set forth in Section 106 of the Copyright Act.

43. Upon information and belief, Defendants created their infringing copies directly from Harris' copyrighted Works.

44. Upon information and belief, Defendants have engaged in and continue to engage in infringing activities, with knowledge of Harris' rights in said Works, and despite Harris' request to stop such infringing activity.

45. Upon information and belief, Defendants directly caused the infringement of Harris' copyrights, and personally participated in, or induced said acts, constituting the infringement described above, and are therefore jointly and severally liable for the infringements.

46. Harris has incurred monetary damages as a result of Defendants' actions.

47. Harris has been irreparably harmed, and has no adequate remedy at law.

48. Harris is therefore entitled to the relief available under the Copyright Act for non-willful copyright infringement, including, but not limited to, actual and/or statutory damages up to $30,000 per violation, the costs of this action, including reasonable attorneys fees, and such other and further relief as to this Court seems just, proper, and equitable.

### AS AND FOR A SECOND CAUSE OF ACTION (WILLFUL COPYRIGHT INFRINGEMENT):

49. Harris repeats and realleges the allegations contained in Paragraphs "1" through "48" of this Complaint as more fully set forth herein.

49. Harris repeats and realleges the allegations contained in Paragraphs "1" through "48" of this Complaint as more fully set forth herein.

50. Harris alleges that Defendants' infringements were reckless, knowing, and/or willful, and/or represent a calculated attempt to profit from their unlawful acts.

51. Harris is therefore entitled to the relief available under the Copyright Act for willful copyright infringement, including, but not limited to, actual and/or statutory damages up to $150,000 per violation, the costs of this action, including reasonable attorneys fees, and such other and further relief as to this Court seems just, proper, and equitable.

### AS AND FOR A THIRD CAUSE OF ACTION
### (TRADEMARK and TRADE DRESS INFRINGEMENT):

52. Harris repeats and realleges the allegations contained in Paragraphs "1" through "51" as if fully set forth herein.

53. Harris has continuously used the mark "WILDLIFE COLLECTION", since at least 1986, in association with his goods in interstate commerce to distinguish his Works from others.

54. Harris has continuously used its packaging, shown in Exhibit B, since at least 1995, in association with his goods in interstate commerce to distinguish his Works from others.

55. Harris' "WILDLIFE COLLECTION" and trade dress have achieved great popularity amongst wildlife and animal enthusiasts, collectors and others through the United States, through Harris' marketing and advertising efforts.

56. Harris has achieved significant sales of its Works and pins using its trademark and trade dress.

57. By reason of the tremendous efforts on the part of Harris, in advertising and promoting his mark and dress, and his consistent, continuous and substantial use of both, the mark and trade dress have achieved secondary meaning and are protectible under the Trademark Act.

58. Upon information and belief, Defendants have, without Harris' permission or authorization, misappropriated Harris' trademark by using the confusingly similar term "WILDLIFE COLLECTIBLES" in association with wildlife and animal pins.

59. Upon information and belief, Defendants have, without Harris' permission or authorization, misappropriated Harris' distinctive Harris trade dress by using the confusingly similar trade dress in association with wildlife and animal pins.

60. Use of the term "WILDLIFE COLLECTIBLES" and similar packaging in connection with Defendants' wildlife pins in commerce is likely to cause confusion or mistake by the public as to the source of such goods, and is likely to deceive the public as to sponsorship, affiliation, and connection of Harris with Defendants and their goods.

61. Based on the foregoing, Defendants have, without the permission and/or authorization of Harris, misrepresented the nature, characteristics, qualities, and/or origin of their goods.

62. Based on the foregoing, Defendants' unlawful use of the "WILDLIFE COLLECTIBLES" term in association with the wildlife pins have caused and will continue to cause harm and damage to Harris.

63. Upon information and belief, Defendants' action were done with knowledge of Harris' trademarks and rights therein.

64. Defendants' willful infringement constitutes exceptional circumstances that warrant heightened and treble damages, costs of this litigation, including reasonable attorneys fees.

65. Defendants' continued use and activities have and will continue to cause irreparable harm to Harris, warranting preliminary and permanent injunctive relief.

66. Harris has no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (REVERSE PASSING OFF and REVERSE CONFUSION):

67. Harris repeats and realleges the allegations contained in Paragraphs "1" through "66" as if fully set forth herein.

68. Upon information and belief, Defendants have advertised Harris' Works for sale on its website (www.wildlifepins.com), and also offered Harris' Works for sale through other retailers.

69. Upon information and belief, Defendants have advertised Harris' Works as its own, and removed and/or otherwise concealed any identifying information from Harris' Works.

70. Upon information and belief, Defendants have, without Harris' permission or authorization, misappropriated Harris' Works and attempted to pass off the Works as that of Defendants.

71. Upon information and belief, Defendants' action were done with knowledge of Harris' trademarks and rights therein.

72. Defendants' willful infringement constitutes exceptional circumstances that warrant heightened and treble damages, costs of this litigation, including reasonable attorneys fees.

73. Defendants' continued use and activities have and will continue to cause irreparable harm to Harris, warranting preliminary and permanent injunctive relief.

74. Harris has no adequate remedy at law.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (PASSING OFF):

75. Harris repeats and realleges the allegations contained in Paragraphs "1" through "74" as if fully set forth herein.

76. Upon information and belief, Defendants have advertised Harris' Works for sale on a website within its control (www.wildlifepins.com), and through other media as genuine products originating from Harris.

77. Upon information and belief, Defendants have passed off its own infringing works as that of Harris' Works and genuine products without authorization or permission from Harris to do so.

78. The sale of products as being genuine product originating from or being approved by Harris is likely to cause confusion or mistake by the public as to the source, origin, and approval of such goods.

79. Upon information and belief, Defendants' action were done with knowledge that such goods being sold as having originated from Harris did not in fact originate from Harris or receive his approval for sale under his name.

80. Defendants' willful unfair competitive activities constitute exceptional circumstances that warrant heightened and treble damages, costs of this litigation, including reasonable attorneys fees.

81. Defendants' continued use and activities have and will continue to cause irreparable harm to Harris, warranting preliminary and permanent injunctive relief.

82. Harris has no adequate remedy at law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (FALSE ADVERTISING and UNFAIR COMPETITION)

83. Harris repeats and realleges the allegations contained in Paragraphs "1" through "82" as if fully set forth herein.

84. Defendants advertise their goods in interstate commerce, including over the Internet and at trade shows located throughout the United States.

85. Defendants' advertising, marketing and promotional materials contain false and/or misleading information, descriptions, or representations of fact in that it conveys the impression that Defendants are the creators, originators, and artists behind its infringing works and also Harris' Works.

86. Defendants' acts constitute unfair competition with Harris, in that Defendants acts are unauthorized and constitute an unlawful appropriation of Harris' intellectual property rights and constitute fraud and misrepresentations as to the origin or source of the respective wildlife and animal pins at issue.

87. Similarly, Defendants' acts constitute unfair competition with Harris, in that the advertising, marketing and promotion of their pins falsely designates their origin and originality, and deprives Harris of revenues to which he is entitled.

88. Defendants' acts constitute false advertising, false designation of origin, unfair competition, the false attribution of authorship, deceptive practices, infringement, and the misappropriation of the efforts of others, namely Harris himself.

89. Unless Defendants are enjoined and restrained from its unlawful conduct, Harris will continue to be irreparably injured and damaged.

90. Harris has no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (ACCOUNTING):

91. Harris repeats and realleges the allegations contained in Paragraphs "1" through "90" of this Complaint as if fully set forth herein.

92. As a consequence of Defendants' infringement, unfair competition and other unlawful acts, Harris is entitled to an accounting from the Defendants for all gains, profits and advantages derived by Defendants from its publication, distribution and sale of the infringing pieces, and upon such an accounting, that Defendants pay over to Harris actual and/or statutory damages and/or all such sums derived by way of profits from the publication, distribution, sale and other disposal of such infringing material.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## (BREACH OF CONTRACT):

93. Harris repeats and realleges all of the allegations contained in Paragraphs "1" through "92" of this Complaint as if fully set forth herein.

94. Defendants wrongfully began infringing Harris' Works and using his trademark and trade dress in an effort to confuse the public as to the source and/or origin of products sold under the same.

95. Harris discussed these intellectual property violations with Defendants requesting that they cease and desist from this infringing activity.

96. Harris and Defendant Douglas discussed the infringing conduct, resulting in Defendants' agreement that it would cease and desist from selling infringing Works and also stop using similar trademarks and trade dress.

97. The parties' agreement was reduced to writing shortly thereafter, wherein Douglas agreed, *inter alia*, to refrain from using Harris' trademarks and trade dress, to destroy certain molds and pieces. Defendants also sent confirmation that they were complying with their agreement to refrain from such infringing conduct. A copy of the Agreement and confirmation is attached as Exhibit C and D.

98. Defendants' agreement to refrain from selling infringing pins and using its trademarks are material provisions of the parties agreements.

99. Defendants have breached this agreement by engaging in the same infringing conduct and also selling more infringing works and also engaging in other unfair competitive activities.

100. Defendants' breach is a material.

101. Defendants' material breaches of the parties' agreement has resulted in substantial damages to Harris.

102. Unless Defendants are enjoined and restrained from its unlawful conduct, Harris will continue to be irreparably injured and damaged.

103. Harris has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

104. Harris demands a trial by jury on all issues so triable.

**WHEREFORE**, Harris demands judgment as follows:

(a) Enjoining Defendants, their agents, representatives and all persons acting under them, during the pendency of this action and thereafter permanently, from infringing Harris' copyrights in any manner, from using the "WILDLIFE COLLECTIBLES" trademark, from using any confusingly similar trademarks and trade dress in commerce on related goods and services, and from advertising, publishing, licensing, distributing, selling, marketing or otherwise disposing of any copies of said cast pieces containing the infringing original Works of art of Harris, and for actual, statutory, and/or compensatory damages;

(b) Enjoining Defendant, its agents, representatives and all persons acting under them during the pendency of this action and thereafter permanently from unlawfully offering for sale copies of Harris' Works, or any other infringing copies, to deliver up all copies currently in Defendants' possession to be impounded during the pendency of this action, which are all in the possession and under the control of the Defendants and to deliver up for destruction any molds, casts, or other materials used in the making and publication of such unlawful materials and for actual, statutory and/or compensatory damages;

(c) An accounting of the profits derived by the Defendants from the advertising, publication, license, distribution, display, or other disposal of Defendants' infringing pins and upon such accounting that Defendants pay to Harris:

    1. Damages provided by statute for Defendants' statutory copyright infringement;

    2. Damages provided by any other statutes for Defendants' unlawful conduct; and

    3. All monies determined to be profits generated or arising from such unlawful materials;

    4. An injunction issued preliminarily to a final hearing and permanently thereafter restraining Defendants, its agents, servants, employees and representatives, and all persons acting in privacy or in concert with them from:

        (i) Manufacturing, selling, advertising or distributing any copies of Defendants' unlawful Works;

        (ii) In any manner, shape or form using the molds produced for the manufacture of the unlawful work or any part of it in connection with the manufacture, sale, advertising or distribution of any other of Defendants' works;

    (iii)    Using any marks confusingly similar to the "WILDLIFE COLLECTION" mark or any trade dress similar to Harris' trade dress on or in association with any related goods or services anywhere; or

    (iii)    Engaging in any acts or making any representations which have the effect of leading the public to believe that the Works sold, manufactured, distributed or advertised by Defendants are in any manner, shape or form originated by, connected, or related to Defendants.

5.    Defendants recall from the possession of any dealers, wholesalers, jobbers and all others all copies of said Works, and directing that they be destroyed or delivered to Harris, as well as the removal of any advertising statements that the Works originate from or by Defendants;

6.    Defendants turn over all molds or other masters used in the manufacture of said unlawful works to Harris for destruction;

7.    After final hearing, damages be awarded to Harris against the Defendants in such an amount as found proper and deemed due and owing from Defendants to Harris;

8.    After final hearing, Defendants be required to account to Harris for any profits derived by Defendants from the acts complained of by Harris in this Complaint;

9.    Harris be awarded the costs and disbursements of this action, including reasonable attorneys fees.

(d)    That Defendants pay general damages to the Harris in an amount to be assessed by Court by reason of Defendants' fraud/misrepresentation, and that Defendants pay to Harris punitive damages, all costs and expenses of this action including reasonable attorneys fees to be assessed by the Court;

(e)    For such other and further relief as to this Court may seem just, proper and equitable.

Respectfully submitted,

DATED: December 21, 2009.

WELLINGHORST & FRONZUTO, LLC

By: _____
Stephen Wellinghorst
Adam James Boyle

4 Franklin Avenue, Suite 3
Ridgewood, New Jersey 07450
Telephone: 201.251.0046
Facsimile:  201.251.3697


Michael A. Oropallo, Esq.
Alpa V. Patel, Esq.
HISCOCK & BARCLAY LLP
One Park Place
300 South State Street
Syracuse, New York 13202
Telephone: 315.425.2831
Facsimile:  315.703.7367